**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARMICHAEL, | ) | |
| | ) | CASE NO.:    1:11CV220 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Plaintiff Donnita Carmichael brings this suit individually and in her official capacity as Administratrix of the Estate of Tonia Carmichael.  Tonia Carmichael was murdered by Anthony Sowell between November and December of 2008.

The Complaint names the following defendants:

(1)    The City of Cleveland;

(2)    Cleveland Police Detective Georgia Hussein;

(3)    Cleveland Police Detective Kristin Rayburn;

(4)    Cleveland Police Lieutenant Michael Baumiller;

(5)    Cleveland Police Sergeant Antoinette McMahon;

(6)    Unknown Detectives of the Cleveland Police Department (Defendants (2)-
(6) are sometimes referred to herein as the "Cleveland Police
Defendants");

1

(7)     The City of Cleveland Health Department;

(8)     Martin Flask, City of Cleveland Public Safety Director (Defendants (1)-(8) are collectively referred to herein as the "Cleveland Defendants");

(9)     Assistant Cleveland Prosecutor Lorraine (erroneously named as "Loretta") Coyne;

(10)    The City of Warrensville Heights;

(11)    Warrensville Heights Police Detective McGlibra;

(12)    Warrensville Heights Police Lieutenant Jelenick;

(13)    Warrensville Heights Police Officer Stephanie Prince;

(14)    Warrensville Heights Police Sergeant Martinez (Defendants (10)-(14) are referred to herein as the "Warrensville Heights Defendants", and Defendants (11)-(14) are sometimes referred to herein as the "Warrensville Heights Police Defendants");

(15)    Cuyahoga County Board of Commissioners;

(16)    Cuyahoga County Sheriff's Department;

(17)    Gerald T. McFaul , Cuyahoga County Sheriff;

(18)    The Ohio Department of Rehabilitation and Corrections ("ODRC");

(19)    Reginald Wilkinson, ODRC Director and Managing Officer;

(20)    Serginia Sowell (Anthony Sowell's mother); and

(21)    Anthony Sowell.

Defendants, excluding Serginia and Anthony Sowell, have filed dispositive motions.  The motions are as follows:

(1)     Warrensville Heights Defendants' Motion for Judgment on the Pleadings (ECF #55);

2

(2)     Motion to Dismiss filed by Defendants City of Cleveland, Cleveland Health Dept., and Martin Flask (ECF #57);

(3)     Defendants' Motion to Dismiss Filed by Det. Georgia Hussein, Det. Kristin Rayburn, Lt. Michael Baumiller, and Sgt. Antoinette McMahon (ECF #56);

(4)     Defendant, Lorraine ("Loretta") Coyne's Motion to Dismiss (ECF #54);

(5)     Defendant, the Ohio Department of Rehabilitation and Correction's, Motion to Dismiss (ECF #29);

(6)     Motion to Dismiss Cuyahoga County Sheriff's Department (ECF #24); and

(7)     Motion to Dismiss Defendant Cuyahoga County Board of Commissioners (ECF #25).

For the reasons stated herein, the dispositive motions are GRANTED in their entirety. Plaintiff's Complaint lacks a plausible claim against the moving Defendants under federal or Ohio law in connection with the tragic murder of Tonia Carmichael.[1]  Counts I, II, IV, V, and VI are therefore dismissed with prejudice.

Further, the sole remaining claim contained in Count III of the Complaint is dismissed without prejudice.  Count III is an Ohio state law claim for negligence/wrongful death against the nonmoving defendants, Serginia and Anthony Sowell.  Plaintiff may refile this claim in state court if she so desires.

## I.  FACTUAL BACKGROUND

The following facts are alleged in the Complaint.  For the purposes of Defendants'

---

[1]It appears that Defendants Wilkinson and McFaul were not served with the Complaint. They are entitled to dismissal under Federal Rule of Civil Procedure 4(m), in addition to the separate grounds for dismissal discussed below.

dispositive motions, they are accepted as true.

In late 2009, the bodies of eleven African-American women, including Tonia Carmichael, were found inside the Cleveland, Ohio home of Anthony Sowell.  Tonia Carmichael had disappeared on or about November 10, 2008.

Ms. Carmichael was a resident of Warrensville Heights, Ohio at all times relevant to the Complaint.  After her disappearance, Ms. Carmichael's family members initially attempted to file a missing person report with the Cleveland Division of Police, because the family believed that Ms. Carmichael had frequented locations in the City of Cleveland.  An officer with the Cleveland Police declined to take a report for a non-resident.

Ms. Carmichael's family went to the Warrensville Heights, Ohio Police Department to make a missing person report 48 hours after her disappearance.  The Warrensville Heights Police Department refused to take the family's missing person report, stating that Ms. Carmichael "will show up after she finishes smoking crack." On December 2, 2008, Ms. Carmichael's family members went back to the Warrensville Heights Police Department and successfully filed a missing person report.

Ms. Carmichael's body was discovered in Anthony Sowell's home in or around October or November, 2009.  The Complaint alleges that Anthony Sowell kept Ms. Carmichael alive for a period of time after her disappearance, and that she was not murdered until on or about December 10, 2008.

In an unrelated incident, on December 8, 2008, Anthony Sowell was arrested by Cleveland Police for allegedly punching, choking and attempting to remove a woman's clothes. After determining there was insufficient evidence to initiate a prosecution, the Assistant

4

Cleveland Prosecutor, Defendant Coyne, declined to charge Sowell. Mr. Sowell was released within the required 24-48 hours.

Plaintiff claims that Cleveland Police Defendants Hussein, Rayburn, Baumiller, and McMahon investigated the 2008 incident, and, among other things, obtained the victim's medical records and observed physical injuries. Plaintiff states she believes that Cleveland Police Defendants either failed to research Mr. Sowell's criminal history, or completely ignored that history, and should have discovered material information to provide to the prosecutor.

Plaintiff further alleges that Anthony Sowell was released in 2008 as a result of an alleged Cleveland practice she terms "straight release and indict later." Plaintiff claims that, under the "straight release" policy, "because of lack of resources, overcrowded jails, lack of manpower, incompetency, or indifference, [...] the investigators and City prosecutor's Office, often release suspects on straight release, with the idea that down the road if more information is obtained the case could be presented to the Grand Jury for a formal indictment. Unfortunately, this practice resulted in the release of Anthony Sowell." Plaintiff alleges that the act of releasing Mr. Sowell on December 8, 2008 was "reckless, wanton and willful."

Plaintiff claims that Defendant the ODRC allowed Anthony Sowell to be released from confinement without rehabilitative treatment presumably being offered during his incarceration. Plaintiff does not allege any facts to indicate that Anthony Sowell qualified for any rehabilitative program.

Plaintiff further states that Defendants the Cuyahoga County Sheriff's Department and the Cuyahoga County Board of Commissioners failed to ensure that Mr. Sowell was properly registered and monitored as a sex offender. According to Plaintiff, these Defendants failed to

5

enforce the community notification provisions for Tier III sex offenders contained in Ohio

Revised Code ("R.C.") § 2950.11, as amended by the Adam Walsh Act.

## II.  LEGAL STANDARDS

The moving Defendants bring their dispositive motions under Federal Rules of Civil

Procedure:

> (1)    12(b)(6):    The Cleveland Defendants; Prosecutor Coyne; Cuyahoga County Board of Commissioners; Cuyahoga County Sheriff's Department;
>
> (2)    12(c):      The Warrensville Heights Defendants; and
>
> (3)    12(b)(1):    ODRC.

### A.    FRCP 12(b)(6) and 12(c)

Decisions granting judgment on the pleadings pursuant to Rule 12(c) are reviewed under

the same standard applied to motions to dismiss under Rule 12(b)(6).  *See Kottmeyer v. Maas*,

436 F.3d 684, 689 (6th Cir. 2006).  The Court construes the complaint in a light most favorable

to the plaintiff, accepts all factual allegations as true, and determines whether the complaint

states a plausible claim for relief.  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.2010) (citing

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).

The Sixth Circuit has applied the now familiar pleading requirements in *Twombly* and

*Iqbal* to both Rule 12(b)(6) and Rule 12(c) motions, and held that plaintiffs must " 'plead ...

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949); *see New Albany Tractor,

Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1049–51 (6th Cir.2011). Merely pleading facts

that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient.  *Iqbal*, 129 S.Ct. at 1949–50; *see Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009).  Additionally, when considering a Rule 12(b)(6) or 12(c) motion, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 689.

The plausibility pleading standard set forth in *Twombly* and *Iqbal* requires a plaintiff to have pled enough facts to state a claim for relief that is plausible on its face. *Iqbal*, 129 S.Ct. at 1950.  A complaint that allows the court to infer only a "mere possibility of misconduct" is insufficient to "show" that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8. *Id.*

### B.    FRCP 12(b)(1)

When a court's subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the party seeking to invoke jurisdiction bears the burden of proof.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks – such as the one at issue in this case – question the sufficiency of the jurisdictional allegations in the complaint.  *Id.*  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party.  *Id.*  Factual attacks, however, challenge the actual fact of the court's jurisdiction.  *Id.*  In such cases, the court is free to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear the case. *Id. See also Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

7

## III. <u>ANALYSIS</u>

Plaintiff's Complaint contains six counts.  Each count is dismissed for the reasons stated herein.

Counts I and II allege violations of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, respectively. Counts I and II name The City of Cleveland and The City of Warrensville Heights only, alleging, among other things, that these Defendants committed acts of racial and national origin discrimination by not taking a missing person report and making a prompt investigation of Tonia Carmichael's disappearance, and not promptly "investigating claims of missing African-Americans, while making a prompt investigations [sic] for white or Asian individuals, despite having official policies and procedures to investigate unusual or unaccountable absences."[2]

Count III is an Ohio state law claim for negligence/wrongful death against nonmoving defendants Serginia and Anthony Sowell.  Count III does not allege any federal claims.

Like much of the Complaint, Count IV is confusing and difficult to parse.  Plaintiff apparently brings Count IV against all Defendants excluding Serginia and Anthony Sowell. Count IV alleges a claim for  "Negligence/Wrongful Death" for: (1) failing to prevent the actions of Anthony Sowell; (2) "allowing Anthony Sowell to be released from confinement without rehabilitative treatment reside in the premises" [sic]; (3) general negligence; and (4) failure to provide notice to neighbors of a Tier III sex offenders residence in the area pursuant to R.C. § 2950.11, as amended by the Adam Walsh Act.

---

[2]Although Plaintiff's briefs in opposition to Defendants' dispositive motions insinuate that Counts I and II were brought against defendants in addition to the City of Cleveland and the City of Warrensville Heights, the Complaint fails to name any other defendants in Counts I and Counts II.

8

Although Count V discusses only the alleged policies and practices of The City of Cleveland, the Cuyahoga County Sheriff's Office, and Sheriff McFaul, Plaintiff apparently brings Count V against all Defendants, excluding Anthony and Serginia Sowell.  Count V alleges a claim for "Negligence/Wrongful Death" allegedly arising from: (1) The City of Cleveland's "policy and practice which encourages the "straight release,, of dangerous suspects who commit crimes and who should be subject to bail and prosecuted, thereby neglecting the safety of the community' [sic]"; (2) the policy and procedure of "Defendant Cuyahoga County" of not regularly checking on sex offenders and their activities; (3) the "grossly negligent, reckless, willful and wanton" enforcement of the "sexually oriented offender and related statutes" by "the county and the sheriff"; (4) failure on the part of the "sheriff" to create or enforce adequate policies "delineating the enforcement of the statute R.C. sec 2950.11 as amended by the AWA provides that the sheriff must provide to neighbors listed in the statute a notice of Tier III offender's residence in the area [sic]"; (5) the Sheriff's failure to ensure that Anthony Sowell "registered with the Sheriff, identified his residence, identified his license plates, identified his email accounts, identified his work location, and identified the type of work he was engaged [sic]."

Count VI is a claim for injunctive relief.  In Count VI, Plaintiff requests that "the city, county and state Defendants provide counseling and to the survivor's [sic] that are next of kin to Tonia Carmichael, the deceased."

In addition to the injunctive relief sought in County VI, Plaintiff seeks compensatory and punitive damages totaling $42,000,000.00.

For the reasons stated below, Counts I, II, IV, V and VI fail to state a plausible claim

against any of the moving Defendants.  The moving Defendants are entitled to dismissal of these Counts with prejudice.

The only remaining Count – Count III – contains only a state law claim.  This claim is dismissed without prejudice subject to refiling in state court.

### A.    Defendant Cuyahoga County Sheriff's Department

Defendant the Cuyahoga County Sheriff's Department is entitled to dismissal under Rule 12(b)(6) because, under Ohio law, a county sheriff's department is not a legal entity subject to suit.  *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007); *Abbott v. Mahoning Cty. Sheriff's Dept.*, 2011 WL 108903 at *1 (N.D. Ohio Jan. 12, 2011).  Indeed, the law is clear that a plaintiff cannot assert a claim against an Ohio county sheriff's department under state tort law (or under 42 U.S.C. § 1983) because a sheriff's department is not *sui juris* under Ohio law. *Id*.  Plaintiff's briefing does argue the contrary, or even address the issue.

Because a county sheriff's office is not *sui juris*, Plaintiff's claims against the Cuyahoga County Sheriff's Department are insufficient as a matter of law.  Dismissal under Rule 12(b)(6) is appropriate.

### B.    Defendant Cuyahoga County Board of Commissioners

Defendant Cuyahoga County Board of Commissioners claims entitlement to dismissal under Rule 12(b)(6) due to the protection of political subdivision immunity established in R.C. § 2744.02.  Plaintiff argues that dismissal is unwarranted because: (1) she is entitled to do discovery, and (2) her allegations fall within one of the exceptions to immunity under R.C. § 2744.02(B).

First, Plaintiff's argument for additional discovery fails.  Plaintiff admits that the

10

"determination of whether governmental immunity under R.C. 2744.02 applies is a question of law to be decided by the court."  (ECF #69, p. 3.)  Thus, the question of whether political subdivision immunity applies does not require further discovery.

Second, Plaintiff's argument that an exception to immunity under R.C. § 2744.02(B) applies lacks merit.  In particular, Plaintiff argues that activity she claims Defendant negligently performed  – "[negligent] enforcement of law in reference to registered sexual offenders" – is a "proprietary function", an exception to the general grant of political subdivision immunity under R.C. § 2744.02.

In Ohio, political subdivisions performing governmental functions are protected from tort liability in most cases by the broad immunities and defenses established by the General Assembly in the Political Subdivision Tort Liability Act, R.C. Chapter 2744.  R.C. § 2744.02; *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2008); *Lambert v. Clancy*, 125 Ohio St.3d 455, 457, 1009-Ohio-1250, ¶¶ 7-9.  The parties do not dispute that Cuyahoga County and the Cuyahoga County Board of Commissioners fall within the definition of "political subdivision" set out in Chapter 2744.  R.C. § 2744.01(F); *Maddox v. E. Cleveland*, 2009 WL 4406124 (Ohio Ap. 8 Dist, 2009-Ohio-6308).

A three-tiered analysis applies to determine whether an Ohio political subdivision is immune from liability under Chapter 2744.  *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp. 2d 610, 630-31 (N.D. Ohio 2010).  The first tier is the general grant of immunity set out in R.C. § 2744.02(A)(1), which provides that, with certain exceptions, local governmental entities are immune from tort liability.  It states:

> For the purposes of this chapter, the functions of political

11

> subdivisions are hereby classified as government functions and proprietary functions.  Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

This general grant of immunity applies regardless of whether the injury or loss is allegedly the result of negligence, an intentional tort, or some intermediate level of misconduct such as recklessness, willfulness, or wantonness.  *EJS Properties, LLC v. City of Toledo*, 651 F. Supp. 2d 743, 759 (N.D. Ohio 2009); *Lee v. City of Cleveland* (2003), 151 Ohio App. 3d 581; *Gabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356; *Rogers v. Youngstown* (1991), 61 Ohio St.3d 205, 211.  The general grant of immunity applies to protect political subdivisions from liability in wrongful death actions.  *Stephens*, 729 F. Supp. 2d at 964; *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574; *Ridley v. Hamilton Cty. Bd. of Mental Retardation,* 102 Ohio St.3d 230, 2004-Ohio-2629.

In addition to setting out the basic rule of immunity, R.C. § 2744.02(A)(1) refers to the two classifications of the functions of political subdivisions: governmental functions and proprietary functions.  The law is clear that provision or nonprovision of police services or protection and enforcement of the law are governmental functions, not proprietary functions as Plaintiff advocates.  R.C. §§ 2744.01(C)(1)(c), (C)(2)(a); *Stephens v. City of Akron*, 729 F. Supp. 2d 945, 964 (N.D. Ohio 2010); *Beckett v. Ford*, 613 F. Supp. 2d 970, 983 (N.D. Ohio 2009); *Haris v. Sutton*, 183 Ohio Spp. 3d 616, 622, 2009-Ohio-4033; *Buoscio v. McFaul* (Aug. 2, 2001), Cuya. App. 78758, 2001 WL 898426, Ohio App. 8 Dist; *Williams v. Franklin Cty., Ohio Sheriff's Dept.* (1992), 84 Ohio App. 3d 826; *Twine v. Franklin Cty Sheriff's Dept.* (1990), 68

12

Ohio App. 3d 51.

Plaintiff's claims against the Defendant Cuyahoga County Board of Commissioners apparently are based upon allegations of actions or inactions of Cuyahoga County, through its officials and employees, with respect to the monitoring of Anthony Sowell as a registered sex offender.  These claims are based upon Cuyahoga County's provision or nonprovision of police services or protection, and/or enforcement of the law, and therefore they fall within the general rule of  immunity set out in R.C. § 2744.02(A)(1) for political subdivisions engaged in governmental functions.

Because Plaintiff's allegations against Defendant Cuyahoga County Board of Commissioners fall within the general grant of political subdivision immunity, the next step is to determine whether any of the exceptions to that immunity might apply.  *Lambert*, 125 Ohio St. 3d at 233.  Plaintiff claims that, in this second tier of the analysis, one of five exceptions set out in R.C. § 2744.02(B) applies.  Specifically, Plaintiff contends that the exception contained in R.C. § 2744.02(B)(2) for "negligence with respect to performing a proprietary function."

Plaintiff's argument for application of the exception for negligence in the performance of proprietary functions is baseless.  As discussed, the provision or nonprovision of police services and protection, and enforcement of the laws, are unequivocally governmental functions.  No amount of tortured analysis could construe the actions at issue here to be anything but governmental functions.  The definition of "proprietary function" in R.C. § 2744.01(G) specifically excludes governmental functions.  Thus, the exception in R.C. § 2744.02(B) for negligence respecting proprietary functions is inapplicable.  Plaintiff does not argue that any other exceptions apply.

13

Because none of the R.C. § 2744.02(B) exceptions apply to Plaintiff's claims against Defendant Cuyahoga County Board of Commissioners, the general rule of immunity set out in R.C. § 2744.02(A)(1) is applicable.  The Court need not reach the third tier of the immunity analysis: consideration of whether immunity is reinstated by application of the specific defenses and immunities set out in R.C. § 2744.03.  *Lambert*, 125 Ohio St. 3d at 233-34.

For these reasons, Plaintiff's Complaint is facially deficient and fails to state a claim upon which relief may be granted.  Defendant the Cuyahoga County Board of Commissioners is dismissed.

### C.    **Defendant ODRC**

Plaintiff alleges that ODRC was jointly negligent and responsible in the "cause and wrongful death of Tonia Carmichael."  Specifically, Plaintiff alleges that ODRC allowed Anthony Sowell to be released from confinement without rehabilitative treatment being offered during his incarceration.

Defendant ODRC brings a facial attack on the Court's subject matter jurisdiction under Rule 12(b)(1).  Specifically, ODRC claims Eleventh Amendment immunity as an arm of the State of Ohio.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by citizens of another state, or by
> citizens or subjects of any foreign state.

Courts have held that the Eleventh Amendment prohibits the federal courts from granting money judgments or injunctive relief against state agencies.  *Ford Motor Co. v. Dept. of*

14

*Treasury*, 323 U.S. 459 (1945); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).  The Sixth Circuit has specifically held that suits against the "state" are prohibited in federal court whether for injunctive, declaratory or monetary relief.  *Lawson v. Shelby County*, 211 F.3d 335 (6th Cir. 2000).

Here, Plaintiff seeks monetary and injunctive relief in a federal court directly against ODRC, a state agency.  ODRC has not consented to suit in this Court.  Therefore, this action is barred by the Eleventh Amendment to the United States Constitution.  The action is dismissed for lack of subject-matter jurisdiction.

Further, the Complaint does not state a claim against ODRC under 42 U.S.C. § 1983. The Complaint very clearly limits its allegations of § 1983 violations to Defendants the City of Cleveland and the City of Warrensville Heights.  Even assuming that § 1983 violations were alleged against ODRC, however, the allegations cannot survive.  As a state agency, ODRC is not a "person" that can be held liable for money damages under § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

Moreover, even supposing that the ODRC could be sued for money damages under § 1983, the Complaint lacks a plausible constitutional claim against ODRC.  Anthony Sowell applied for and was denied entrance into a sexual offender program years prior to his release from prison in 2004.  He was denied admittance because he denied and refused to accept responsibility for committing the offense.  The Complaint lacks any allegation that Mr. Sowell qualified for any rehabilitative treatment.  And even if Mr. Sowell had qualified for some rehabilitative program being offered, Mr. Sowell had no constitutional right to treatment, as is required for a claim under § 1983.  *See Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001)

(a constitutional violation is required for a § 1983 claim); *Sigley v. City of Parma Heights*, 437 F.3d 527, 544 (6th Cir. 2006) (same). Certainly Tonia Carmichael had no constitutional right for Mr. Sowell to receive treatment; if this is Plaintiff's intended argument, she provides no support for her claim.

Finally, if disbelief is suspended and it is assumed that Mr. Sowell had a constitutional right to sexual offender treatment, Plaintiff here may not sue under § 1983 on behalf of Tonia Carmichael to vindicate a constitutional right belonging to Mr. Sowell. A § 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). Only the purported victim of the constitutional tort may prosecute a § 1983 claim. *Id.* No cause of action lies under § 1983 for collateral injuries allegedly suffered personally by another. *Id.* For this reason, and all of the reasons discussed, Plaintiff's claims against ODRC are dismissed.

### D.    **Defendant Coyne**

Plaintiff seeks to hold Defendant Prosecutor Coyne liable for her alleged failure to investigate the 2008 case against Anthony Sowell, and her decision not to prosecute that case. Plaintiff's claim fails. Defendant Coyne is entitled to absolute prosecutorial immunity for the alleged conduct.

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). Absolute immunity for prosecutorial functions applies equally to state law tort claims. R.C. § 2744.03(A)(7) (preserving common law immunity for prosecutors).

Absolute immunity is available to prosecutors because the Court fears that exposing a

16

prosecutor to lawsuits growing out of his official activity would divert "his energy and attention

... from the pressing duty of enforcing the criminal law." *Imbler*, 424 U.S. at 420.  Absolute

immunity allows a prosecutor to exercise his independent judgment in "deciding which suits to

bring and in conducting them in court" based on his duty to the public rather than on a fear of

potential liability in a suit for damages.  *Id.* at 424-25.  See also *Joseph v. Patterson*, 795 F.2d

549, 553-55 (6th Cir.1986), cert. denied, 481 U.S. 1023 (1987) (discussing *Imbler*).

The *Imbler* rule affords prosecutors absolute immunity from potential lawsuits when the

prosecutor's "challenged activities [were] an 'integral part of the judicial process.' " *Imbler*, 424

U.S. at 430.  Absolute immunity protects a prosecutor from exposure to lawsuits, not just

liability; "[t]he rationale for granting absolute immunity is 'as much to protect the relevant

persons from a trial on their actions as it is to protect them from the outcome of the trial.' "

*McSurely v. McClellan*, 697 F.2d 309, 315 (D.C. Cir.1982) (quoting *Briggs v. Goodwin*, 569

F.2d 10, 59 (D.C. Cir.1977) (Wilkey, J., concurring), cert. denied, 437 U.S. 904 (1978)).

The *Imbler* Court, however, noted that the prosecutor's responsibilities could "cast him in

the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430-31 &

n. 33.  The Court suggested that a prosecutor's absolute immunity would extend only to his

actions as an officer of the court, in the course of the judicial process, and not to his actions as a

mere administrator or investigator.  *Id.* at 431 n. 33.

To determine when the prosecutor is entitled to absolute immunity, the Supreme Court

has adopted what is called a "functional approach." It examines "the nature of the functions with

which a particular officer or class of officials has been lawfully entrusted, and we seek to

evaluate the effect that exposure to particular forms of liability would likely have on the

17

appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 542 (1988).[3]

"Functional analysis" focuses on the role of the prosecutor at the time he engages in the challenged conduct. "Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding." M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 7.8 (1986).  In *Imbler*, for example, the prosecutor was absolutely immune even for allegedly knowingly using perjured testimony and suppressing exculpatory material at trial. *Imbler*, 424 U.S. at 427 n. 27.  In comparison, in *Mitchell v. Forsyth,* 472 U.S. 511, 524, the Attorney General was deemed by a plurality not to be "acting in a prosecutorial capacity." Even if not entitled to absolute immunity, a prosecuting attorney may claim qualified immunity.

To distinguish between conduct entitled to absolute immunity and conduct entitled to qualified immunity, "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate ultimately associated with the judicial phase of the criminal process." *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir.1986).  The Sixth Circuit has referred to conduct entitled to absolute immunity as "quasi-judicial" or "advocatory." *Id.*

_____

[3]In *Forrester*, the Court faced questions of judicial immunity but also commented upon its extension to prosecutors, stating "[t]he nature of adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has been most generously been provided." *Id.*, 108 S.Ct. at 544.  *Forrester* cautions that absolute immunity is "strong medicine" which is invoked only in appropriate cases where there is danger of being deterred from or chilled in the exercise of what is essentially a judicial function. *Id.*, 108 S.Ct. at 545.

Plaintiff here challenges Defendant Coyne's failure to investigate the facts of Anthony Sowell's 2008 case, and her decision to not bring charges against Mr. Sowell.  Prosecutor Coyne's alleged actions spring from her role as a quasi-judicial officer.  It is clear that the decision to investigate criminal charges is "quasi-judicial" or "advocatory," and thus is protected by absolute immunity.  *Grant v. Hollenbach*, 870 F.2d 1135, 1138-39 (6th Cir. 1989).  Moreover, the decision to prosecute, "even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler*." *Joseph*, 795 F.2d at 557 (citing *Imbler*, 424 U.S. at 424).  Despite the allegations in Plaintiff's Complaint, Prosecutor Coyne is absolutely immune from both suit and liability concerning the alleged failure to  investigate Mr. Sowell's 2008 case, and the decision not to prosecute that case.

### E.     The Warrensville Heights Defendants

#### 1.     Federal Claims

##### a.     42 U.S.C. § 1981

Plaintiff brings claims under 42 U.S.C.§ 1981 alleging that actions of the City of Warrensville Heights  "resulted in the deprivation of the civil rights of Tonia Carmichael an African American, as a direct result of clear racially motivated discrimination."  (Compl. ¶ 39.) Under § 1981(a), "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . ."

Of the Warrensville Defendants, only the City of Warrensville Heights is named in the Complaint in connection with Plaintiff's § 1981 claim.  Even assuming that Plaintiff intended to

19

bring this claim against the remaining Warrensville Heights Defendants, Plaintiff has not properly pled a claim under § 1981, for at least two reasons.  First, the Supreme Court held in *Jett v. Dallas Indep. Sch. Dist.* that "[Section] 1981's implicit cause of action does not extend to suits brought against state actors."  *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)).  *Arendale* establishes Sixth Circuit jurisprudence that despite the 1991 amendment to subsection (c) of § 1981 (which some circuits have interpreted as overruling *Jett*) the amended language does not create a new private cause of action against political subdivisions in addition to § 1983.[4]  *Arendale*, 519 F.3d at 584, 596, 599.  Thus, the § 1981 claim against the Warrensville Heights Defendants fails.

Second, Plaintiff's § 1981 claim is not properly pled because Plaintiff has failed to assert any facts beyond a "formulaic recitation of the elements of a cause of action" that she was treated differently from other, similarly situated missing persons because of race.  *Iqbal*, 129 S.Ct. at 1949.  To state a claim under § 1981, the plaintiff must allege that she was treated differently because of her race.  *Davey v. Tomlinson*, 627 F. Supp. 1458 (E.D. Mich. 1986) (citing *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974)).  To state such a claim, the plaintiff must allege:

    (1)    membership in a racial minority;

    (2)    that Defendants intended to discriminate on the basis of race; and

    (3)    discrimination concerning one of the activities enumerated in § 1981.

*King v. City of Eastpointe*, 86 Fed. Appx. 790 (6th Cir. 2003).  These allegations should be supported by specific acts, practices, or policies which resulted in the alleged discrimination.  *Id.*

---

[4]Section 1981(c) states, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

A claim that an official, acting under the color of law, intentionally refused to perform an act, even a discretionary one, solely on the basis of a complainant's race states a cause of action under 42 U.S.C. § 1981.  *Jafree v. Barber*, 689 F.2d 640 (7th Cir. 1982).

The Complaint here lacks any facts related to the alleged race discrimination.  Instead, the factual allegations indicate that, if anything, Tonia Carmichael was discriminated against based upon her status as a known drug user.  This is insufficient to maintain a claim under 42 U.S.C. § 1981, which requires an allegation of racial animus.  Consequently, Plaintiff's 42 U.S.C. § 1983 claim fails as a matter of law.

### b.  42 U.S.C. § 1983

Plaintiff also has asserted violations of 42 U.S.C. § 1983 against the City of Warrensville Heights.  For the purposes of this Order, the Court assumes that Plaintiff also meant to bring a § 1983 claim against each of the remaining Warrensville Heights Defendants.

Section 1983 creates a remedy for those denied the "rights, privileges or immunities secured by the Constitution and laws."  *Johnson v. City of Detroit*, 446 F.3d 614, 619 (6th Cir. 2009).  To state a claim under § 1983, Plaintiff must establish two things: (1) Tonia Carmichael was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law.  *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

Plaintiff's Complaint does not clearly specify the constitutional right(s) that Plaintiff alleges were violated.   It appears, however, that Plaintiff attempts to assert that the Warrensville Heights Defendants violated Tonia Carmichael's rights to substantive due process and equal protection, as secured by the Fourteenth Constitutional Amendment.

21

### i.        **Substantive Due Process**

Plaintiff has failed to allege facts to plausibly state a claim for violation of Ms.

Carmichael's substantive due process rights.  The Due Process Clause of the Fourteenth

Amendment states that "no State shall . . . deprive any person of life, liberty or property without

the due process of law."  The Supreme Court has held that "the Due Process Clauses generally

confer no affirmative right to governmental aid, even where such aid may be necessary to secure

life, liberty, or property interests of which the government itself may not deprive the individual."

*DeShaney v. Winnebago Cty. Dept. of Social Svs.*, 489 U.S. 189, 196 (1989).  Accordingly, it is

clear that the Warrensville Heights Defendants did not have a constitutional duty to prevent

Anthony Sowell from murdering Tonia Carmichael.

There are limited exceptions to the *DeShaney* rule, none of which apply here.  First, there

is no "special relationship" between the governmental entity (Warrensville Heights) and the

individual citizen (Tonia Carmichael), because Tonia Carmichael was never taken into custody,

as is required for a special relationship to arise.  *Id.* at 199-200.

Second, Warrensville Heights did not create a "special danger" which could give rise to

liability.  The victim faces a "special danger" when the state's actions place the victim

specifically at risk, as distinguished from a risk to the public at large.  To prevail under this

theory, the plaintiff must prove: (1) the plaintiff was a member of a specifically defined group;

(2) the defendant's conduct put the plaintiff (and other members of the group) at substantial risk

of immediate and proximate harm; (3) the risk was known and obvious; and (4) the defendant

acted recklessly in conscious disregard of that risk.  *Kallstrom v. City of Columbus*, 136 F.3d

1055 (6th Cir. 1998).  Here, Plaintiff pled no facts to establish that the Warrensville Heights

Defendants acted to put Tonia Carmichael specifically at risk as opposed to the public at large, that Ms. Carmichael belonged to a specifically defined group, or that the danger posed by Anthony Sowell was known and obvious.

The Sixth Circuit considered a strikingly similar case in *Gazette v. City of Pontiac*, 41 F.3d 1061 (6th Cir. 1994), and held that the government and its employees did not violate the decedent's constitutional rights.  In *Gazette*, a woman was abducted from a car wash.  She was imprisoned in the trunk of her car and eventually died of starvation, thirst, and poisoning from having attempted to drink windshield wiper fluid.  The woman's family went to the police station to file a missing person report.  The police department, which was familiar with the woman and knew her to be an alcoholic, refused to take a missing person report.  The police told the family that the woman would show up when she was "finished binging"  The police later lied to the family and told them they had conducted an investigation when they did not do anything.  The Sixth Circuit affirmed the trial court's dismissal of a lawsuit under Rule 12(b)(6).  Citing *DeShaney*, the Sixth Circuit held that the defendants' conduct did not violate the woman's right to substantive due process.  The court held that, at most, the defendants failed to rescue the woman, but did not create the danger she encountered.  *Id.*

As in *Gazette*, Plaintiff here has failed to show that the Warrensville Heights Defendants placed Tonia Carmichael in "special danger."  Although the decedent's death is truly horrific and a tragedy, the danger she faced was created by the actions of Anthony Sowell, a private actor, and not the Warrensville Heights Defendants.  Under *DeShaney* and its progeny, the Complaint fails to state a plausible claim against the Warrensville Heights Defendants for violation of substantive due process.

23

## ii.    <u>Equal Protection</u>

Plaintiff also has failed to allege a Fourteenth Amendment equal protection violation. The Equal Protection Clause protects against "invidious discrimination among similarly situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Ed.*, 470 F.3d 250, 260 (6th Cir. 2006). To establish an equal protection violation, Plaintiff must establish that the challenged police action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Bennett v. City of Eastpoint*, 410 F.3d 810 (6th Cir. 2005) (citations omitted). To show discriminatory effect, Plaintiff must plead facts to establish that Tonia Carmichael was treated differently from similarly situated individuals. *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 55, 566 (6th Cir. 2004). To show discriminatory purpose, the plaintiff must establish that an official chose to engage in the action because of, not merely in spite of, its adverse effects upon an identifiable group. *Bennett*, 410 F.3d at 818 (6th Cir. 2005). There is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one. *Harajli v. Huron Twp.*, 365 F.3d 501, 508 (6th Cir. 2004) (citations omitted).

Here, Plaintiff appears to assert that the missing person report was treated differently because Tonia Carmichael was African American. However, as with Plaintiff's 42 U.S.C. § 1981 claim, the Complaint lacks factual allegations to support a claim of racial discrimination, or a finding that the Warrensville Heights Police Defendants acted with discriminatory purpose. Instead, the Complaint alleges that the missing person report was rejected because Tonia Carmichael was a drug addict and would return when she exhausted her supply of drugs. This

24

allegation is insufficient to establish a claim for race discrimination under the Equal Protection Clause.

Additionally, Plaintiff has failed to allege facts to demonstrate a discriminatory effect. Plaintiff has not alleged a single fact to support the legal conclusion that similarly situated individuals who were members of a different race were treated differently. Consequently, it is indisputable that Plaintiff has not pled sufficient facts, and that the Warrensville Heights Defendants did not violate Tonia Carmichael's equal protection rights.[5]

Having failed to adequately plead a Fourteenth Amendment constitutional violation, Plaintiff's federal claims against the Warrensville Heights Defendants fail as a matter of law. These claims are dismissed.[6/7]

---

[5]Any claim Plaintiff intends to assert based on Tonia Carmichael's status as a drug addict also is dismissed. The status of being a substance abuser is not a suspect class for equal protection analysis, so the lowest level of scrutiny applies to Defendants' actions. *See Gazette*, 41 F.3d at 1066. Under the "rational basis test" applied for low level scrutiny, Defendants' actions are constitutional if they are rationally related to a legitimate government interest. Applying this test, the Sixth Circuit held in *Gazette* that it is rational for police to not expeditiously investigate the disappearance of a recovering alcoholic because the police have prior experience with the missing person and believe she is undergoing a "binging" episode. The court held that this decision was rationally related to a legitimate government interest in determining how to allocate scarce police resources. *Id.* at 1067. Under the reasoning in *Gazette*, a decision to not promptly investigate the disappearance of a drug addict is rationally related to the legitimate government interest in determining how to allocate police resources. Consequently, the any equal protection claim based on Plaintiff's status as s drug addict fails.

[6]It is unclear whether Plaintiff sues the Warrensville Heights Police Officer Defendants McGlibra, Jelenick, Martinez and Prince in their individual or official capacities. To the extent Plaintiff intended to file suit against these Defendants in their individual capacities, these Defendants are entitled to dismissal of the Complaint because qualified immunity protects them from suit and liability. The doctrine of qualified immunity is an affirmative defense that "shields government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)) (internal quotations omitted).

25

2.      **State Law Claims**

Plaintiff's state law claims against the Warrensville Heights Defendants also fail as a

matter of law.  The Warrensville Heights Defendants are immune from Plaintiff's claims under

R.C. Chapter 2744.

As previously discussed, two criteria must be satisfied to qualify for immunity under

Chapter 2744.  First, the defendant attempting to invoke the immunity must be a political

subdivision.  Second, the political subdivision must have been engaged in either a governmental

or proprietary function.  Plaintiff does not dispute that the City of Warrensville Heights is a

political subdivision.

Further, under the first tier of the sovereign immunity analysis, all of Plaintiff's

allegations pertain to "governmental" functions, particularly "the provision or nonprovision of

police . . . services or protection."  *See Meredith v. Cleveland Hts. Police Dept.*, Cuya. App. No.

93436, 2010-Ohio-2472.  Under the second tier of the sovereign immunity analysis, none of the

---

Qualified immunity serves as both "a defense against liability" and "an entitlement not to stand
trial or face the other burdens of litigation."  *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d
394, 400 (6th Cir. 2009) (citing  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001)).  It is Plaintiff's
burden to show a constitutional violation to defeat qualified immunity.  As discussed, Plaintiff
here has failed to adequately plead a constitutional violation.  Thus, qualified immunity applies.
*Saucier*, 533 U.S. at 201.

[7]Claims against municipalities, such as the City of Warrensville Heights, challenging the
municipality's policies, procedures and training practices cannot stand if the plaintiff's
constitutional rights were not violated. *Wilson v. Morgan*, 477 F.3 d326, 340 (6th Cir. 2007).  If
"a person suffered no constitutional injury at the hands of the individual police officer, the fact
that the departmental regulations might have authorized the [alleged constitutional violation] is
quite beside the point."  *City of Lost Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Plaintiff has
failed to adequately plead a violation of any constitutional right.  Thus, Plaintiff's federal claims
against the City of Warrensville Heights fail as a matter of law.

26

exceptions to immunity listed at R.C. § 2744.02(B) apply in this case.  In particular, contrary to Plaintiff's claims, this case does not involve negligence in the performance of a "proprietary function."  By definition, matters designated as governmental functions are excluded from the term proprietary function.  R.C. § 2744.01.

Because none of the exceptions to sovereign immunity apply, the Court need not engage in the third tier of the sovereign immunity analysis to decide whether immunity could be reinstated pursuant to the defenses set forth in R.C. § 2744.03. Sovereign immunity applies.

Additionally, the Warrensville Heights Police Defendants are immune from Plaintiff''s claims under R.C. § 2744.03(A)(6), which provides immunity from liability to employees of political subdivisions.  That section provides:

> (A)　　In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities ay be asserted to establish non-liability: . . .
>
> (6)　　. . . [T]he employee [of a political subdivision] is immune from liability unless one of the following applies;
>
> > (a)　　The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> >
> > (b)　　The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> >
> > (c)　　Liability is expressly imposed upon the employee by a section of the Revised Code.

By its terms, R.C. § 2744.03(A)(6) creates a presumption of immunity.  *Cook v. Cincinnati*, 103 Ohio App. 3d 80, 90 (1995).  As with the subdivision itself, this presumption

27

may only be overcome by demonstrating that an exception to immunity applies.  *M.B. v. Elyria City Bd. of Educ.*, 9th App. Dist, 05CA008831, 2006-Ohio-4533.

None of these exceptions in under R.C. § 2744.03(A)(6) apply in this case.  No section of the Revised Code expressly imposes liability on the individually named Warrensville Heights Police Officers.  Plaintiff cannot dispute that the Warrensville Heights Police Officers were acting within the scope of their employment at the time that this incident occurred.

Likewise there are no allegations that would invoke the exception contained in R.C. § 2744.03(A)(6)(b) and demonstrate that the Warrensville Heights Police Officers acted willfully, wantonly, and recklessly.  The facts alleged in the Complaint do not rise to this heightened level of culpability.

"Wanton" misconduct refers to a failure to exercise any care whatsoever.  *Fabrey v. McDonald Village Police Department*, 70 Ohio St.3d 351, 356 (Ohio 1994).  "Willful misconduct" is an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary for safety, or purposely doing wrong acts with knowledge or appreciation of the likelihood of injury."  *Brockman v. Bell*, 78 Ohio App.3d 508, 515 (Ohio App. 1 Dist. 1992).  "Recklessness" is a perverse disregard of a known risk.  *O'Toole v. Denihan*, 118 Ohio St.3d 374 92008), syl. ¶ 3.  The actor must be conscious that his conduct will in all probability result in injury.  *Id*.

Here, the sole allegation is that the Warrensville Heights Police Defendants failed to prepare a missing person report 48 hours after Tonia Carmichael went missing, and stated that Ms. Carmichael would show up once she had finished doing drugs.  There are no allegations that would permit an inference that the Warrensville Heights Police Defendants had any knowledge

that Tonia Carmichael had been kidnapped or was in any imminent danger, or that the Warrensville Heights Police Defendants had any reason to suspect her dire situation. Consequently, the Warrensville Heights Police Defendants are entitled to immunity under Chapter 2744 of the Ohio Revised Code.[8]

### F.    The Cleveland Defendants

Like the claims previously discussed, all of Plaintiff's federal and state claims against the Cleveland Defendants fail as a matter of law.  Plaintiff's Complaint lacks a plausible cause of action against any of the Cleveland Defendants.

As an initial matter, claims against the Cleveland Health Department lack merit because the Health Department  is not *sui juris*.  "Administrative units of a local government are not *sui juris* because they lack the power to sue, and cannot be sued absent positive statutory authority." *Hicks v. City of Barberton*, 2011 WL 3022089, *2 (N.D. Ohio July 22, 2011).  Thus, the Health Department is not a proper party.  Plaintiff fails to assert any plausible constitutional or Ohio law claim against the remaining Cleveland Defendants.

### 1.    Federal Claims

#### a.    42 U.S.C. § 1981

Plaintiff's § 1981 claim is not properly pled because Plaintiff has failed to assert any facts beyond a "formulaic recitation of the elements of a cause of action" that Tonia Carmichael was treated differently from other, similarly situated missing persons because of race.  *Iqbal*, 129 S.Ct. at 1949.  To state a claim under § 1981, Plaintiff must allege that Tonia Carmichael was

---

[8]Even without immunity, the Warrensville Heights Defendants are entitled to dismissal because the Complaint does not plausibly allege that the Warrensville Heights Defendants owed a duty to Tonia Carmichael, or were the actual or proximate cause of her death.

treated differently because of her race. *Davey,* 627 F. Supp. 1458 (citing *Long*, 496 F.2d 500).

Plaintiff does not allege how the Cleveland Defendants treated Tonia Carmichael differently

from any other similarly situated missing persons.   Plaintiff's briefing does not dispute, or even

address this deficiency in the Complaint.  Therefore, Plaintiff's § 1981 claim against the

Cleveland Defendants is dismissed.

### b.    <u>42 U.S.C. § 1983</u>

#### i.    <u>Due Process</u>

Plaintiff likewise has not properly pled a claim under § 1983 against the Cleveland

Defendants.  The Supreme Court's *DeShaney* rule makes clear that the Fourteenth Amendment

Due Process Clause generally does not confer any affirmative right to governmental aid, even

where such aid may be necessary to secure life, liberty, or properly.  *DeShaney*, 489 U.S. at 196.

Thus, Tonia Carmichael had no affirmative constitutional right to the Cleveland Defendants'

protection from Mr. Sowell, a future, unknown assailant.

Plaintiff's Complaint lacks any facts to establish an exception to the *DeShaney* rule.

First, there are no facts to show a custodial relationship between the Cleveland Defendants and

Tonia Carmichael as is required to show a "special relationship."  No special relationship was

created, and the Cleveland Defendants had no affirmative duty to assume responsibility for Tonia

Carmichael's safety and well-being.

Second, the Complaint is devoid of facts to establish a "special danger."  Plaintiff failed

to plead that any action taken by the Cleveland Defendants placed Tonia Carmichael specifically

at risk, as distinguished from a risk that may have affected the public at large.  *Kallstrom*, 136

F.3d 1055 (the "special danger" exception to the *DeShaney* rule requires that the defendant's

actions  place the plaintiff specifically at risk as opposed to the public generally).  By releasing Anthony Sowell in 2008, the Cleveland Defendants placed Tonia Carmichael in no greater danger than the general population.  Thus, the Cleveland Defendants had no affirmative duty to prevent Anthony Sowell's private act of violence against Tonia Carmichael.

### ii.      Equal Protection

Plaintiff also has failed to allege a Fourteenth Amendment equal protection violation.  As previously discussed, the Equal Protection Clause protects against "invidious discrimination among similarly situated individuals or implicating fundamental rights."  *Scarbrough*, 470 F.3d at 260.  To establish an equal protection violation, Plaintiff must establish that the challenged police action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Bennett*, 410 F.3d 810.  To show discriminatory effect, Plaintiff must plead facts to establish that Tonia Carmichael was treated differently from similarly situated individuals.  *Singfield*, 389 F.3d at 566.

Plaintiff's Complaint does not allege a single fact to support that the Cleveland Defendants treated Tonia Carmichael differently from any other similarly-situated missing persons.  Absent any such facts, the Complaint lacks a plausible equal protection claim.[9]

Because the Complaint fails to plead a due process or equal protection violation committed by the Cleveland Defendants, Plaintiff's allegations of liability for the supposed policy of "straight release" are baseless.  A municipality may be held liable under § 1983 when execution of a local government's policy or custom inflicts the plaintiff's constitutional injury.

---

[9]Additionally, proximate cause is required to sustain a § 1983 claim.  *Id.*  There is no proximate cause between the acts of the Cleveland Defendants and Tonia Carmichael's unfortunate death by Sowell, a private actor.

31

*Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).   However, challenges to the

municipality's policies, procedures and training practices cannot stand if the plaintiff's

constitutional rights were not violated.  *Wilson*, 477 F.3d at 340.  If "a person suffered no

constitutional injury at the hands of the individual police officer, the fact that the departmental

regulations might have authorized the [alleged constitutional violation] is quite beside the point."

*Heller*, 475 U.S. at 799.  Plaintiff has failed to adequately plead a violation of any constitutional

right.  Thus, Plaintiff's claims concerning the Cleveland Defendants' policies or customs, and in

particular the alleged policy of "straight release," fail as a matter of law.[10]/[11]

## 2.      State Law Claims

Plaintiff's negligence and wrongful death claims lack merit because the Cleveland

Defendants are immune from liability under R.C. § 2744.02.  Cleveland is a political subdivision

as defined in Division (F).  Cleveland was performing a governmental function in its act of

releasing Anthony Sowell.  Subdivisions (C)(2)(a) and (h) provide that the provision of police

services or protection and the operation of jails are a "governmental function."  *Id*.  The wrongful

death allegedly occurred as a result of governmental action or inaction.  This falls squarely within

---

[10]To the extent Plaintiff intended to file suit against the Cleveland Police Defendants in their individual capacities, these Defendants are entitled to dismissal of the Complaint because qualified immunity protects them from suit and liability.  *See Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (citing  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001)).  Once qualified immunity is raised as a defense, it is Plaintiff's burden to show a constitutional violation to defeat qualified immunity.  As discussed, Plaintiff here has failed to adequately plead a constitutional violation.  Thus, qualified immunity applies.  *Saucier*, 533 U.S. at 201.

[11]Plaintiff's assertion that any of the Cleveland Defendants are vicariously liable for the alleged policy of "straight release" also fails.  The doctrine of *respondeat superior* does not apply.  A governmental entity cannot be held liable under § 1983 based solely upon allegations that an employee or agent inflicted an injury.  *Porter v. City of Columbus*, 2008 WL 5210873, *4 (S.D. Ohio Dec. 12, 2008).

the immunity provided by R.C. § 2744.02.  Thus, the Cleveland Defendants are protected under statutory immunity and no exception applies.[12]

Additionally, negligence as the basis for a claim against a municipality requires the same tort law principles that are applied to private parties."  *Maust v. Meyers Products, Inc.*, 64 Ohio App. 3d 310 (Ohio App. 8th Dist. 1989).  To sustain a cause of action, the pleadings must allege the existence of a duty, a subsequent breach, and causation between the breach and the alleged wrongful death.  Plaintiff has failed to establish that the Cleveland Defendants had a duty toward Tonia Carmichael, that the Cleveland Defendants breached that alleged duty, and that the breach caused her death.  Absent a plausible claim against the Cleveland Defendants, the Complaint against them must be dismissed.

### G.    Injunctive Relief

Plaintiff's claim for injunctive relief against the moving Defendants is untenable for many reasons.  Among other things, Plaintiff has failed to demonstrate a likelihood of success on the merits.  Indeed, this Order makes clear that Plaintiff's Complaint borders on frivolity with respect to the claims asserted against the moving Defendants.  As such, there is no basis for an award of injunctive remedies.

### V.  CONCLUSION

For all of the reasons stated, the Complaint is dismissed with prejudice with respect to Counts I, II, IV, V, and VI.  Count III is dismissed without prejudice.

---

[12]The Cleveland Police Defendants are entitled to statutory immunity under R.C. § 2744.03(A)(6), for the reasons previously discussed in connection with the immunity applicable to the Warrensville Heights Police Defendants.

33

IT IS SO ORDERED.

s/Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE


DATED: April 30, 2012